UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

In re:

STEPHEN DREW CHAMBERLAIN

Debtor.

Bankruptcy Case No. 15-22234 TBM
Chapter 13

_____

**OPINION AND ORDER REGARDING OBJECTION TO AMENDED PROOF OF CLAIM
AND OBJECTION TO THIRD AMENDED CHAPTER 13 PLAN**
_____

      Proving the popular musical adage that "breaking up is hard to do,"[1] the Debtor, Stephen Drew Chamberlain (the "Debtor"), and his ex-wife, Judith Chamberlain (the "Creditor"), are engaged in protracted and highly-contentious litigation stemming from their 2008 divorce proceedings.[2] Truly a multi-jurisdictional affair, the parties litigated their disputes in the Circuit Court for Anne Arundel County (Maryland),[3] the Court of Appeals of Maryland,[4] the United States District Court for the District of Maryland,[5] the United States Court of Appeals for the Fourth Circuit,[6] and the United States Supreme Court.[7] Now, the Debtor and the Creditor are continuing their bitter fight in this Court based upon the Debtor's recent petition for relief under Chapter 13 of the Bankruptcy Code.

      Judith Chamberlain is the Debtor's largest unsecured creditor. The Court already conducted a trial and ruled on the contested proof of claim (Proof of Claim No. 1-2, the "Second Proof of Claim") filed by the Creditor. The Court ordered that the Second Proof of Claim be allowed in the reduced amount of $108,085 as a "domestic support obligation" ("DSO") under Section 101(14A)[8] and entitled to priority under Section 507(a)(1)(A). Determining the amount and priority of the Second Proof of Claim was a necessary predicate to the Debtor's being able to propose a viable Chapter 13 plan. The Debtor appealed the Court's claim decision, but also filed an amended Chapter 13 plan based upon the Court's determination of the amount and priority of the Creditor's Second Proof of Claim.

---

[1]      Neil Sedaka, *Breaking Up Is Hard To Do* (RCA Victor Records, 1962).
[2]      The Debtor and Mrs. Chamberlain entered into a Marital Settlement Agreement, dated November 24, 2008. However, the Maryland state court did not issue its "Judgment of Absolute Divorce" until May 22, 2009.
[3]      Case No. 02-C-09-139690 (original divorce proceedings).
[4]      Appeal No. 02-C-09-139690 (appeal of divorce judgment).
[5]      Case No. 15-CV-1476 JFM (Debtor's lawsuit against state court judge in divorce proceedings).
[6]      Appeal No. 15-1710 (appeal of dismissal of Debtor's lawsuit against state court judge in divorce proceedings).
[7]      Appeal No. 15-536 (appeal of divorce judgment); and Appeal No. 15-1087 (appeal of dismissal of Debtor's lawsuit against state court judge in divorce proceedings).
[8]      Unless otherwise indicated, all references to "Section" are to Sections of the United States Bankruptcy Code. 11 U.S.C. § 101 *et seq.*

1

Now, the parties have presented the Court with a new round of disputes. First, the Creditor attempted to increase her claim against the Debtor by filing an amended proof of claim (Proof of Claim No. 1-3, the "Third Proof of Claim"). Not surprisingly, the Debtor objected. Second, the Debtor sought confirmation of his most recent amended Chapter 13 plan. Naturally, the Creditor objected. The Court now issues its decision on these matters.

## I.     Procedural Background.

### A.     The Bankruptcy Filing, Creditor's Proofs of Claim, and First Claim Objection.

The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on November 2, 2015. (Docket No. 1.) He filed his first Chapter 13 plan the same day. (Docket No. 2.) The Creditor filed her first proof of claim (Proof of Claim No. 1-1, the "First Proof of Claim") on November 23, 2015, asserting that the Debtor was obligated to her, her children, and her divorce counsel, Marietta Warren, in the total amount of $91,734. She asserted that the First Proof of Claim was entitled to priority as a DSO pursuant to Sections 101(14A) and 507(a)(1)(A). The Creditor amended the First Proof of Claim by filing the Second Proof of Claim on January 6, 2016. The Second Proof of Claim increased the amount claimed as a DSO to $116,728. (Proof of Claim No. 1-3.) The Creditor did not request an award of attorney's fees and costs for work in the bankruptcy case in either the First Proof of Claim or the Second Proof of Claim.

On January 8, 2016, the Debtor filed a "Second Amended Chapter 13 Plan" (Docket No. 32)[9] and an "Objection to Amended Proof of Claim of Judith Chamberlain" (Docket No. 34, the "First Claim Objection"). In his First Claim Objection, the Debtor acknowledged that $6,653 of the amount claimed by the Creditor in the Second Proof of Claim was a DSO, but asserted that the remainder should be reclassified as a general unsecured claim in a reduced amount. Thereafter, the Creditor filed a "Response to Objection to Amended Proof of Claim" (Docket No. 38) wherein she defended the amount and priority of the Second Proof of Claim. The Creditor did not request an award of attorney's fees and costs.

The Court conducted an initial non-evidentiary hearing on the First Claim Objection and opposition, permitted discovery, and entertained more expansive legal briefing. (Docket Nos. 47, 51, 53, and 55.) Thereafter, on April 27, 2016, the Court conducted a full evidentiary hearing on the issues raised by the First Claim Objection and opposition. (Docket No. 58.) At trial, the Creditor did not request an award of attorney's fees and costs.

### B.     The Court's Final Order on the First Claim Objection.

After taking the matter under advisement, on May 6, 2016, the Court entered its final oral ruling (confirmed by a minute order) in which it sustained in part and overruled in part the Debtor's First Claim Objection to the Creditor's Second Proof of Claim. (Docket Nos. 62 and 63.) Specifically, the Court ruled that the Second Proof of Claim would be allowed in the amount of $108,085 and disallowed in the amount of $8,632.85. The Court also ruled that the allowed portion of the Creditor's claim, $108,085, was entitled to priority as a DSO under Sections

---

[9]     The Debtor filed a "First Amended Chapter 13 Plan" somewhat earlier. (Docket No. 21.) However, the Debtor did not prosecute the "First Amended Chapter 13 Plan."

2

101(14A) and 507(a)(1)(A). Neither the Debtor nor the Creditor requested an award of attorney's fees or costs within 14 days after entry of the judgment on the First Claim Objection. *See* Fed. R. Civ. P. 54(d) and Fed. R. Bankr. P. 9014(c) and 7054. But, on May 16, 2016, the Debtor filed a notice of appeal of the Court's final ruling, commencing an appeal in the United States District Court for the District of Colorado.

### C. The Third Plan, Third Proof of Claim, Second Claim Objection, and Confirmation Objection.

All of which brings the Court to the current issues. Not long after issuing its decision on the First Claim Objection, on May 24, 2016, the Debtor filed another Chapter 13 plan titled "Second Amended Chapter 13 Plan," which was actually a *Third* Amended Chapter 13 Plan, (the "Third Plan," Docket No. 72). The Third Plan provided for payment of the Creditor's $108,085 claim as a priority claim under Section 507(a)(1)(A). But, the proposal was unacceptable to the Creditor. Instead, the Third Plan prompted two new contested matters between the Debtor and the Creditor.

#### 1. The Third Proof of Claim and Second Claim Objection.

On June 21, 2016 (about six weeks after the Court's final ruling on the First Claim Objection), the Creditor filed another amended proof of claim (Proof of Claim No. 1-3), which was the Third Proof of Claim. In the Third Proof of Claim, the Creditor included the amount approved by the Court ($108,085) but then tacked on an additional unapproved $14,645 in attorney's fees and $121.66 in costs allegedly incurred in connection with the Debtor's bankruptcy filing and her post-petition efforts to establish the amount and priority of the Second Proof of Claim.

On June 28, 2016, the Debtor filed an "Objection to Second Amended Proof of Claim Submitted by Judith Chamberlain (Claim #1)." (Docket No. 89, the "Second Claim Objection.") The Debtor argued that the attorney's fees and costs included in the Third Proof of Claim were improper. The Creditor opposed the Second Claim Objection and the Debtor replied again in support. (Docket Nos. 97 and 98.)

#### 2. The Confirmation Objection.

Presented with the Third Plan, neither the Chapter 13 Trustee nor any creditor objected — *except* Judith Chamberlain. On June 22, 2016, the Creditor filed an "Objection to Confirmation of Plan" (Docket No. 87 the "Confirmation Objection"), in which she argued that the Third Plan could not be confirmed for three reasons. First, she bootstrapped on her Third Proof of Claim and argued that the Third Plan is underfunded in that it does not provide for payment of the new attorney's fees and costs asserted in the new Third Proof of Claim. Second, she objected that the payment priorities set forth in the Third Plan are not consistent with the priority scheme set forth in Sections 507(a)(1)(A) and 1322(a)(2), in that the Third Plan provided for payment of the Debtor's attorney's fees prior to the full payment of her DSO. Third, she contended that the Third Plan could not be confirmed because this case was not filed in good faith. The Debtor contested the Creditor's arguments and requested confirmation of the Third Plan. (Docket No. 92.)

3

### 3. **Non-Evidentiary Hearings.**

The Court conducted an initial non-evidentiary hearing on the Second Claim Objection (and opposition) and the Confirmation Objection (and opposition) on July 6, 2016. (Docket No. 94.) At the hearing, the Court raised the question of whether the Creditor could properly include amounts for attorney's fees and costs in the Third Proof of Claim even though the Creditor had failed to comply with Fed. R. Civ. P. 54(d) and Fed. R. Bankr. P. 9014(c) and 7054. The Creditor contended that the Court's May 6, 2016 ruling was interlocutory and not a final determination of the First Claim Objection. The Court permitted (and received) further legal briefing on the issues. (Docket Nos. 97 and 98.) The Court also conducted another non-evidentiary hearing on August 3, 2016. (Docket No. 94.)

The Court has fully reviewed and considered the Third Plan, the Third Proof of Claim, the Second Claim Objection (and opposition), the Confirmation Objection (and opposition), and the full record in this case. Having considered these documents and the history of the proceedings, the Court concludes that the Second Claim Objection and two of the three arguments raised in the Confirmation Objection (the underfunding and priority objections) are ripe for decision now based upon the procedural history and law. Both the Debtor and the Creditor have received full and fair opportunities to present their respective positions in writing and orally in these issues. No evidentiary hearing is warranted or required on these matters since the issues are legal, not factual, in nature. Further, the Court concludes that additional legal argument and briefing on these issues would not materially assist the Court. After the Court decides these pending matters, only one of the arguments raised in the Confirmation Objection (the good faith objection) will remain for future decision.

## II.     **Jurisdiction and Venue.**

This Court has jurisdiction to determine matters related to the Second Claim Objection and the Confirmation Objection pursuant to 28 U.S.C. § 1334. The matters are core matters in that they: (a) relate to the administration of the Debtor's estate pursuant to 28 U.S.C. § 157(b)(2)(A); (b) involve the allowance or disallowance of claims under subsection (b)(2)(B); (c) concern confirmation of a bankruptcy plan under subsection (b)(2)(L); and (d) relate to other proceedings affecting the liquidation of the assets or the estate or the adjustment of the debtor-creditor relationship under subsection (b)(2)(O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    **Legal Discussion.**

### A.    **The Second Claim Objection.**

Six weeks after the Court entered its ruling on the First Claim Objection (sustaining in part and overruling in part the First Claim Objection and allowing the Second Proof of Claim in the amount of $108,085 as a priority), the Creditor unilaterally sought to add attorney's fees and costs in defending against the First Claim Objection through filing the Third Proof of Claim. The Third Proof Claim contains an invoice from the Creditor's legal counsel listing all legal fees incurred by the Creditor in defending against the First Claim Objection.

The Debtor contested the Third Proof of Claim by filing the Second Claim Objection and raising numerous procedural, factual, and legal arguments against allowance of attorney's fees and costs. (Docket No. 89 at 2.) Procedurally, the Debtor contended that:

- "Creditor could have, but did not make any request for the inclusion of these fees in the previous hearing on the Debtor's objection to the [Second] Proof of Claim or in any of the previously filed Proof of Claims."

- "Creditor's fees have not been formally requested from this Court.…"

- "Rule 7054 applies…. Rule 7054 requires that a motion for attorney fees be filed and provide notice within its terms…. The time period for filing such a motion [was]… 14 day's notice…. Creditor has not filed a motion for her attorney fees within the requisite time period."

(Docket No. 89 at 2 and No. 98 at 2-3). The Creditor initially argued that the Court's May 6, 2016 judgment on the First Claim objection was interlocutory. However, in her opposition to the Second Claim Objection, the Creditor seems to have abandoned that contention and instead argues that "Creditor was not required to file a bill of costs under Fed. R. Civ. P. 54 and/or Bankruptcy Rule 7054 following the Court's ruling on Debtor's objection to her [Second] Proof of Claim." (Docket No. 97 at 3.)

### 1.     Under the "American Rule" Attorney's Fees Are Not Generally Recoverable.

In *Busch v. Hancock (In re Busch)*, 369 B.R. 614 (10th Cir. BAP 2007), the Tenth Circuit Bankruptcy Appellate Panel explained the framework for considering attorney's fees requests:

> Under the "American Rule" applied in federal litigation, a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This general rule applies to bankruptcy litigation. *In re Reid*, 854 F.2d 156, 161-62 (7th Cir.1988); *All Am. of Ashburn v. Fox (In re Fox)*, 725 F.2d 661, 662 (11th Cir.1984). However, there are two major exceptions to the "American Rule": (1) the rule is abrogated when the parties have entered a contract that shifts attorney's fees, and (2) the rule is abrogated when a statute provides for fee shifting. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1237-38 (10th Cir.1999).

*Busch*, 369 B.R. at 624-25. In *Busch*, the Bankruptcy Appellate Panel concluded that federal bankruptcy law did not preclude the award of attorney's fees pursuant to contract or state statute to a prevailing party, consistent with the reasoning in *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007), and that where such awards were made in connection with the prevailing party's enforcement of a DSO, such awards could be part and parcel of that underlying nondischargable debt, consistent with *Cohen v. de la Cruz*, 523 U.S. 213 (1998). *Busch*, 369 B.R. at 625-26.

Under *Busch*, therefore, the Creditor might have sought an award of fees and costs pursuant either to the parties' Marital Settlement Agreement (if the agreement contains an applicable attorney's fees provision) and/or Maryland law (if Maryland law permits the recovery of attorney's fees). However, as set forth below, the Creditor simply skipped the procedural requirements for seeking attorney's fees.

### 2. The Creditor Waived Any Potential Claim for Attorney's Fees and Costs by Failing to Act Within 14 Days After the May 6, 2016 Ruling.

#### a. The First Claim Objection Was a "Contested Matter" Under Fed. R. Bankr. P. 9014.

A debtor's objection to a bankruptcy proof of claim initiates a "contested matter" within the meaning of Fed. R. Bankr. P. 9014.[10] *Fairchild v. I.R.S. (In re Fairchild)*, 969 F.2d 866, 868 (10th Cir. 1992); *see also* A. Resnick and H. Sommer, 10 COLLIER ON BANKRUPTCY ¶ 9014.01 (Lexis Nexis 16th ed. 2016)(confirming that claims objections are "contested matters")[hereinafter, "___ COLLIER ON BANKRUPTCY ¶ ___"]. Disputes regarding the priority status of a claim also are contested matters. *See In re Pattalochi*, 269 B.R. 60, 60-61 (Bankr. D. Wyo. 2001)(holding that court has jurisdiction to hear dispute regarding priority as contested matter under 28 U.S.C. § 1334); *In re Suburban Motor Freight*, 134 B.R. 617, 619-20 (Bankr. S.D. Ohio 1994)(same).

Thus, the Debtor's First Claim Objection was a "contested matter" under Fed. R. Bankr. P. 9014. The Court expressly confirmed that the dispute was a "contested matter" at the non-evidentiary hearing on February 24, 2016, during which the Court permitted discovery under Fed. R. Bankr. P. 9014(c). Furthermore, in the Court's May 6, 2016 ruling, the Court specifically noted that the parties' dispute concerning the amount and priority of the Second Proof of Claim was a "contested matter." *See* May 6, 2016 Ruling Transcript, Docket No. 81 at 4-5. Even the Creditor now concedes that "objections to claims are contested matters governed by Bankruptcy Rule 9014." (Docket No. 97 at 3.)

#### b. Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54 Presumptively Apply in "Contested Matters."

In order to facilitate prompt adjudication of "contested matters" while also protecting the parties' due process interests, the Federal Rules of Bankruptcy Procedure dictate that many of the procedural rules otherwise applicable only in "adversary proceedings" also govern "contested matters." Fed. R. Bankr. P. 9014(c) is quite explicit:

> Application of Part VII Rules. Except as otherwise provided in this rule [governing "contested matters"], and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071.

---

[10] Fed. R. Bankr. P. 9014(a) states: "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice an opportunity for hearing shall be afforded…."

6

The Creditor never acknowledges Fed. R. Bankr. P. 9014(c). Instead, the Creditor pretends that:

> … the Court can safely conclude that Debtor's claim objection was resolved under Part IX of the Bankruptcy Code,[11] which governs contested matters, rather than Part VII, which apply [sic] to adversary proceedings. *Rule 7054 does not apply to contested matters resolved under Rule 9014*, which is why Creditor was not required to file a bill of costs and affidavit of attorney's fees following the Court's ruling on Debtor's Objection to Creditor's Proof of Claim.

(Docket No. 97 at 3)(emphasis added).

The Court cannot image a more brazen misstatement of the law. Although the Creditor asserts that Fed. R. Bankr. P. 7054 "does not apply to contested matters," the black and white text of Fed. R. Bankr. P. 9014(c) states the exact opposite. Fed. R. Bankr. P. 9014(c) confirms that Fed. R. Bankr. P. 7054 presumptively *does apply to contested matters* like the First Claim Objection. The only exceptions are where the Rule directs otherwise or if the "court directs otherwise." Neither is present in this case. In fact, the Court twice confirmed that the First Claim Objection was a contested matter and confirmed the availability of discovery under Fed. R. Bankr. P. 9014(c).

### c. **Fed. R. Bankr. P. 7054 and Fed. R. Civ. P. 54 Establish Strict Deadlines for Recovery of Attorney's Fees and Costs.**

Fed. R. Bankr. P. 7054 provides: "The Court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Further, Fed. R. Bankr. P. 7054 expressly incorporates the relevant portions of Fed. R. Civ. P. 54(d) governing the recovery of attorney's fees. In turn, Fed. R. Civ. P. 54(d)(2) states:

> (2) Attorney's Fees.
>
> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>
> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
>
> (i) be filed no later than 14 days after the entry of judgment;

---

[11] Presumably, the Creditor erroneously referred to "Part IX of the Bankruptcy Code" while intending to refer to Part IX of the Federal Rules of Bankruptcy Procedure. That would seem to be the case since there is no "Part IX of the Bankruptcy Code."

7

> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

"Judgment," in turn, is defined in Fed. R. Civ. P. 54(a) as "any order from which an appeal lies." District Courts have jurisdiction to hear appeals "from final judgments, orders, and decrees," pursuant to 28 U.S.C. § 158(a).

During the non-evidentiary hearing on July 6, 2016, the Creditor insisted that the Court's May 6, 2016 ruling determining the First Claim Objection (including establishing the amount and priority of the Second Proof of Claim) somehow was "interlocutory" so that the Fed. R. Civ. P. 54(d)(2)(B) deadline never started. Again, the Creditor misstated the law. Instead the exact opposite is true.[12]

The Supreme Court has held that a decision is considered "final" for purposes of 28 U.S.C. § 158 if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). In the bankruptcy context, it is well-established that "[a]n order on an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1)." *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 260 B.R. 517, 520 (10th Cir. BAP 2001) (citing *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000)). Further, "an order fixing the priority of a creditor's claim is a final order for appeal purposes." *Geneva Steel*, 260 B.R. at 520; s*ee also In re Kids Creek Partners*, L.P., 200 F.3d 1070, 1074 (7th Cir. 2000) (same).

### d. The Creditor Did Not Meet Her Deadline and Waived Any Claim to Attorney's Fees and Costs.

Under the foregoing Rules and statutes, the Court's May 6, 2016 judgment triggered the Creditor's 14-day deadline for seeking attorney's fees and costs. Put another way, under Fed. R. Civ. P. 54(d)(2)(B)(i), the Creditor had 14 days from May 6, 2016 – that is, until May 20, 2016 – by which to file a motion seeking an award of attorney's fees. With respect to "costs other than attorney's fees," the Creditor also had a 14-day deadline to submit a bill of costs to be taxed. Fed. R. Bankr. P. 7054(b)(1).

It is undisputed that the Creditor did not file a motion for attorney's fees or a bill of costs within 14 days after the Court's May 6, 2016 ruling. In fact, the Creditor still has not filed a

---

[12] Having received the Creditor's oral argument on the interlocutory issue, the Court required that the Creditor submit a legal brief presenting legal authority for her position. Rather than continue with the interlocutory argument, the Creditor ignored and thereby abandoned the position in her written response. (Docket No. 97.)

motion for attorney's fees or a bill of costs. Instead, the Creditor waited 46 days and then filed the Third Proof of Claim, unilaterally adding attorney's fees and costs without Court approval.

Unfortunately for the Creditor, "a party's failure to file a timely motion for attorney's fees under Rule 54(d)(2) serves as a waiver of the request." *Romanguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998). Federal courts routinely deny attorney's fees requests for failure to comply with the timing requirement of Fed. R. Civ. P. 54(d). *Miracle Gash v. Client Services, Inc.*, 2013 WL 1130717, at *4 (D. Colo. Mar. 18, 2013). Furthermore, in this case, the Creditor has not presented any legal basis or factual excuse for failing to comply with the timing deadline. Neither has the Creditor pled excusable neglect or requested an extension of the Fed. R. Civ. P. 54 deadline. Instead, it appears that the Creditor is simply trying to circumvent the applicable procedural rules by employing the gambit of filing the Third Proof of Claim.

### e. **The Court Need Not Address the Other Arguments in the Second Claim Objection.**

In addition to the procedural bar, the Debtor raised numerous other arguments why the Creditor is not entitled to the additional attorney's fees and costs unilaterally added to the Third Proof of Claim. Given that the Creditor clearly failed to comply with Fed. R. Civ. P. 54 and Fed. R. Bankr. P. 7054 and 9014(c), resulting in a waiver of any possible entitlement to attorney's fees and costs, the Court need not address any additional arguments presented by the Debtor in the Second Claim Objection at this time.

### f. **The Second Claim Objection Is Sustained.**

The Creditor waived whatever right she may have had to request and recover her post-petition attorney's fees and costs related to the Second Proof of Claim and the First Claim Objection. Thus, the Court sustains the Debtor's Second Claim Objection and determines again that the Creditor has an allowed claim of $108,085, which amount is entitled to priority as a DSO under Sections 101(14A) and 507(a)(1)(A).

## B. **The Confirmation Objection.**

The Creditor objected to confirmation of the Debtor's Third Plan and asserted three arguments: (1) the Third Plan is underfunded in that it does not provide for payment of the attorney's fees and costs asserted in the new Third Proof of Claim; (2) the payment scheme is not consistent with the priorities set forth in Sections 507(a)(1)(A) and 1322(a)(2); and (3) this bankruptcy case was not filed in good faith.

### 1. **The Underfunding Objection Is Not Valid.**

In her first objection to confirmation of the Debtor's Third Plan, the Creditor noted that she had filed "an Amended Proof of Claim [the Third Proof of Claim] in this case in the amount of $122,851." (Docket No. 87 at 1.) Then, the Creditor correctly observed that the Third Plan, which predated the Third Proof of Claim, did not provide for the full payment of the additional attorney's fees and costs included in the new Third Proof of Claim. In other words, the Debtor used the new Third Proof of Claim as a pretext to deny confirmation of the Third Plan.

9

But, the underfunding objection is not valid. As set forth above, the Court already has sustained the Second Claim Objection. The Court has not allowed the inflated Third Proof of Claim and the new attorney's fees and costs since the Creditor waived such amounts by failing to comply with Fed. R. Civ. P. 54 and Fed. R. Bankr. P. 7054 and 9014(c). Instead, the Creditor's allowed claim is for $108,085. The Third Plan fully provides for this exact amount. Thus, the underfunding objection is summarily overruled.

### 2.  **The Priority Objection Is Not Valid.**

In her second objection to confirmation of the Debtor's Third Plan, the Creditor asserted that the Debtor's Third Plan does not comply with Sections 507(a)(1)(A) and 1322(a)(2) because it provides for the payment of the Debtor's Class One attorney's fees prior to paying in full the Class One DSO owed to the Creditor. The Debtor disagreed and argued that the priority administrative expense claim of Debtor's counsel may be paid first or at least concurrently with the Creditor's claim. Further, the Debtor made a policy argument that if the Debtor's counsel is not paid first or at least concurrently with other Class One claims, then legal counsel will be reluctant to represent debtors in Chapter 13 cases with large DSO claims. Finally, the Debtor also stated that, since certain components of the DSO will not come due until after confirmation of the Third Plan, those payments need not be paid in full prior to distributions to Debtor's counsel.

### a.  **The Proposed Treatment of Class One Claims Under the Third Plan.**

The Debtor's Third Plan faithfully follows the model form plan mandated in the District of Colorado. L.B.R. 3015-1(a)(1) and L.B.F. 3015-1.1. Section IV of the Third Plan provides:

> A. **Class One -- Claims entitled to priority under 11 U.S.C. § 507.** Unless other provision is made in paragraph V.(C), each creditor in Class One shall be paid in full in deferred cash payments prior to the commencement of distributions to any other class (except that the payments to the Trustee shall be made by deduction from each payment made by the debtor to the Trustee) as follows:
>
> 1. Allowed administrative expenses
>    - (a) Trustee's compensation (10% of amounts paid by debtor under this Plan)  $ 13,850.80
>    - (b) Attorney's Fees (estimated and subject to allowance)  $ 10,000.00
>    - (c) Attorney's Costs (estimated and subject to allowance)  $ 0.00
>
> 2. Other priority claims to be paid in the order of distribution provided by 11 U.S.C. § 507 (if none, indicate)  $ 113,136.36
>
>    (a) Domestic Support Obligations: **A proof of claim must be timely filed in order for the Trustee to distribute amounts provided by the plan.**
>
>    Priority support arrearage: Debtor owes past due support to ___ in the total amount of $___ that will be paid as follows: (See attached Addendum for DSO arrears)
>
>    [X]  Distributed by the Trustee pursuant to the terms of the Plan; or
>
>    [X]  Debtor is making monthly payments via a wage order [ ] or directly [X] (reflected on Schedule I or J) in the amount of $___ to ___. Of that monthly amount, $___ is for current support payments and $___ is to pay the arrearage. $5,000 per month maintenance / $1,500 per month child support pursuant to Marital Settlement Agreement and Consent Orders.

The Addendum attached to the Third Plan states:

**ADDENDUM TO
AMENDED CHAPTER 13 PLAN DATED 5/25/2016**

CLASS I – PRIORITY DOMESTIC SUPPORT AMOUNTS

| Description | Principal Amount | Amount Paid in Plan |
|---|---|---|
| Child Support Arrears | $1,500.00 | $1,666.39 |
| Maintenance Arrears | $5,000.00 | $5,554.58 |
| John – Tuition Judgment | $14,000.00 | $15,552.80 |
| Attorney Fee Judgment (minus $2,357.47 from garnishment) | $1,242.57 | $1,380.36 |
| Kate – Student Loans | $23,800.94 | $26,440.66 |
| Sarah – Student Loans | $20,541.57 | $20,541.57 |
| John – Future Tuition | $42,000.00 | $42,000 |
| | $108,085.08 | $113,136.36 |

Under the Third Plan, the Debtor treats the $113,136.36 DSO (a $108,085 portion of which is owed as arrearages and a portion of which will come due during the life of the Third Plan) as one obligation.

In terms of priority within Class One, it appears that the Debtor proposes to pay the amounts owed to the Chapter 13 Trustee as an administrative expense. The super-priority treatment of the Chapter 13 Trustee's compensation comports with Section 507(a)(1)(C). As the Court interprets the Third Plan, the Debtor proposes to pay $10,000 to the Debtor's counsel for attorney's fees prior to paying the Creditor. During the July 6, 2016 non-evidentiary hearing, the Chapter 13 Trustee confirmed that interpretation and stated that if the Third Plan were confirmed, it would be administered in such fashion. Indeed, that approach (*i.e.*, paying Debtor's counsel's fees before a Class One DSO) appears to be the standard procedure routinely followed by the Chapter 13 Trustee in the District of Colorado. Next, the Court understands that the Third Plan obligates the Debtor to pay the Creditor $113,136 as a DSO after payment of the Chapter 13 Trustee's compensation and the Debtor's attorney's fees. Finally, unsecured creditors will be paid last with any remaining plan payments under the Third Plan.

Regarding the specific timing and amount of payments, the Court construes the Third Plan as containing seven payment brackets. The Debtor proposes to pay the Trustee:

| Number of Monthly Payments and Amount | Months | Total Amount |
|---|---|---|
| 1.  2 Monthly Payments of $615 | Dec. 2015 – Jan. 2016: | $ 1,230 |
| 2.  4 Monthly Payments of $640 | Feb. 2016 – May 2016: | $ 2,560 |
| 3.  1 Payment of $13,000 | June 2016: | $13,000 |
| 4.  4 Monthly Payments of $970 | July 2016 – Oct. 2016: | $ 3,880 |
| 5.  19 Monthly Payments of $1,192 | Nov. 2016 – May 2018: | $22,648 |
| 6.  1 Payment of $1,723 | June 2018: | $ 1,723 |
| 7.  29 payments of $3,223 | July 2018 – Nov. 2020: | $93,467 |
| | Total: | $138,508 |

11

According to this proposed schedule, the Debtor's counsel would be paid in full in 2016. Thereafter, the Creditor would be paid on her DSO claim, with payments not completed until November 2020. And, unsecured creditors would not receive a penny until November 2020. Contrawise, if the Creditor's opposing view is correct, she should be paid in full by about September 2020 and Debtor's counsel should be paid from September 2020 to November 2020. So, the position advocated by the Creditor would result in the Creditor's DSO claim being paid a few months earlier than the schedule in the Third Plan.

      **b.**      <u>**The Statutory Framework.**</u>

To assess whether attorney's fees for the Debtor's counsel may properly be paid ahead of the Creditor's DSO claim under the Third Plan, the Court must consider three Sections of the Bankruptcy Code — Sections 507, 1322(a)(2) and 1326(b)(1) — as well as the interplay between such provisions.

      **i.**      <u>**Section 507.**</u>

Section 507 sets forth "the general priority scheme for the Bankruptcy Code." *In re Reid*, 2006 WL 2077572, at *2 (Bankr. M.D.N.C. Jul. 19, 2009). Since most bankruptcy cases will "not generate sufficient proceeds to pay in full all claims," Congress' idea was to create a listing of priorities for allocation of the insufficient funds. 4 COLLIER ON BANKRUPTCY ¶ 507.02. Section 507 identifies 10 categories of "priorities."

The highest priority under Section 507 is "allowed unsecured claims for domestic support obligations…." 11 U.S.C. § 507(a)(1)(A). Although such claims (which include the DSO owed by the Debtor to the Creditor) are afforded an unequivocal first-priority status, the Bankruptcy Code provides an exception (sometimes referred to as a carve-out or super-priority) for administrative expenses owed to the Chapter 13 Trustee.[13] 11 U.S.C. § 507(a)(1)(C). In other words, the priority granted to a DSO is "subordinate to certain fees and expenses of a trustee to the extent that the trustee administers assets that are otherwise available for the payment of these claims." 4 COLLIER ON BANKRUPTCY ¶ 507.01.

DSO claims were not always afforded first priority in the Bankruptcy Code. In fact, prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109–8, 119 Stat. 23 (2005), "bankruptcy administrative expenses were accorded the highest priority and domestic support obligations were granted seventh priority." 4 COLLIER ON BANKRUPTCY ¶ 507.02[1][a]. With the amendment of Section 507, Congress "enhance[d] the status of domestic support obligations" to prevent abuse of the bankruptcy process by those who owed such obligations. *Id.* "The series of domestic support amendments mark a

---

[13]     The priority is somewhat qualified, in that Section 507(a)(1)(C) includes the caveat that "if a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims." In other words, the priority granted to DSO claims is "subordinate to certain fees and expenses of a trustee to the extent that the trustee administers assets that are otherwise available for the payment of these claims." 4 COLLIER ON BANKRUPTCY ¶ 507.01.

12

congressional intent that domestic support obligations be considered paramount in bankruptcy cases." *Id.*

Meanwhile, Congress also elevated the position for attorney's fees to a very high priority level: a second-priority status. 11 U.S.C. § 507(a)(2). In other words, under Section 507, an obligation owed to compensate and reimburse a professional under Sections 330(a) and 503(b) is afforded a position second only to a DSO. And the high general priority afforded to bankruptcy legal fees comes before a raft of other priority claims (such as claims by employees, for taxes, and for damages caused by drunk driving) and well-ahead of unsecured claims. 11 U.S.C. § 507(a).

### ii. Sections 1322(a)(2) and 1326(b)(1).

But reviewing Section 507 is only part of the necessary inquiry. That is because Section 507 is a statute of general application in the Bankruptcy Code. The Court also must consider specifically how Section 507 is integrated into this Chapter 13 case. Chapter 13 mentions Section 507 only once in Section 1322(a)(2) which states:

> The plan…shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim[.]

Notably, Section 1322(a)(2) does not expressly require that claims entitled to priority under Section 507 must be paid *in the order listed in Section 507*. Instead, all Section 507 claims (whether for DSO claims, attorney's fees, taxes, or otherwise) must be paid in full in cash over time under the plan. If a debtor cannot pay all Section 507 priority claims in full during the term of the plan, then the plan cannot be confirmed. 11 U.S.C. §§ 1322(a)(2) and 1325(a)(1) and (6).

In the Confirmation Objection, the Creditor disregarded another key provision in Chapter 13. Section 1326(b)(1) states:

> *Before or at the time of such payment* to creditors under the plan, there shall be paid… any unpaid claim of the kind specified in section 507(a)(2) of this title.

(emphasis added). And, as set forth above, Section 507(a)(2) specifies administrative expense claims for attorney's fees. So, in Chapter 13 cases, Congress confirmed that attorney's fees for counsel are required to be paid ahead of, or at least concurrently with, other creditor claims.

### c. The Statutory Framework Dictates that the Attorney's Fees of Debtor's Counsel May Be Paid Ahead of the Creditor's DSO Claim.

The principal fallacy in the Confirmation Objection is that the Creditor focused almost exclusively on the first-priority afforded to DSO claims generally under Section 507 and ignored that this is a Chapter 13 case. And, Chapter 13 is unique. Comparison to Chapter 7 illustrates the point.

13

Section 726 governs distribution of property of the estate in Chapter 7 cases and states:

> … property of the estate shall be distributed — (1) first, in payment of claims of the kind specified in, *and in the order specified in*, section 507 of this title….

11 U.S.C. § 726(a)(1) (emphasis added). The Creditor seems to assume that such Chapter 7 principle is equally mandated in this Chapter 13 case. However, while Chapter 7 expressly requires distributions "in the order specified in [] § 507," there is absolutely no comparable provision in Chapter 13. Instead, as set forth above, Section 1322(a)(2) mandates payment in full of all Section 507 claims over time.

A leading treatise states the real rule in Chapter 13: "… there is no requirement that any of these priority claims [under Section 507], except for fees and administrative expenses, be paid temporally in the prescribed order of priority [under Section 507] or in advance of unsecured claims generally." 10 COLLIER ON BANKRUPTCY ¶ 1322.03[2]; *see also* H. Drake, P. Bonapfel & A. Goodman, CHAPTER 13 PRACTICE & PROCEDURE § 6:5 (Thompson Reuters 2016)("Chapter 13… does not incorporate the provisions of Chapter 7 with regard to the order of payment of claims.") Indeed, "[t]he order of priority of claims in § 507 is not relevant in a Chapter 13 case — all the priority claims listed are entitled to full payment in a Chapter 13 case without regard to where they appear on the [Section 507] list." K. Lundin and W. Brown, CHAPTER 13 BANKRUPTCY, 4th Ed., § 98.1 (www.ch13online.com, Supp. 2016).

Notably, the Creditor failed to cite a single reported decision holding that priority DSO claims must be paid before administrative expense claims of debtor's counsel.[14] The reason for this omission seems obvious to the Court: every reported opinion ever directly addressing the issue refutes the Creditor's legal position. *Sanders*, 341 B.R. 47 (Bankr. N.D. Ala. 2006), *aff'd* 347 B.R. 776 (N.D. Ala. 2006), is typical:

> Congress clearly intended to require the continued payment of administrative expenses [attorney's fees] before or contemporaneously with payments to other claimholders, even § 507(a)(1) [domestic support obligation] claimholders. Had Congress intended to afford this special payment treatment to § 507(a)(1) support obligations, it could have expressly done so. Congress provided domestic support obligations other special

---

[14] The Creditor did cite two cases in her Confirmation Objection. (Docket No. 87.) Neither decision remotely supports the position being advanced by the Creditor. In *In re Andrews*, 434 B.R. 541 (Bankr. W.D. Ark. 2010), the attorney who had represented the Chapter 13 debtor's former wife in pre-petition divorce proceedings objected to confirmation of a Chapter 13 plan on the basis that the plan failed to pay the ex-spouse in full (including her attorney's fees incurred in the divorce). The central issue was whether the attorney's fees incurred in the divorce qualified as a DSO. The court determined that such divorce attorney's fees were "in the nature of support" and a DSO (which is consistent with this Court's May 6, 2016 ruling). Further, the court observed that a DSO "is entitled to first priority and must be paid in full by a Chapter 13 plan." *Id*. at 545. But the *Andrews* court did not consider at all the question raised by the Creditor: May the bankruptcy administrative expense claim of the debtor's counsel be paid before a DSO claim? The other case referenced by the Creditor, *In re Maldonado*, 2014 WL 5241490 (Bankr. D.P.R. 2014), likewise is inapposite. *Maldonado* did not pit a DSO claim against administrative expenses of debtor's counsel to determine which claim could be paid first.

14

> protections under the BAPCPA amendments…. Congress did not, however, see fit to also require § 507(a)(1) claims be paid before or at the time of each payment to creditors under the plan.
>
> Section 507(a)(2) grants priority to administrative expenses allowed under § 503(b) and fees and charges assessed under chapter 123 of title 28. Section 503(b)(2) provides that there shall be allowed administrative expenses including "compensation and reimbursement awarded under section 330(a) of this title[.]" Section 330(a)(4)(B) specifically provides that the Court may award reasonable compensation in a Chapter 13 case "to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Accordingly, § 507(a)(2) administrative expenses include attorneys' fees to debtors' counsel. These fees must be paid either before or contemporaneously with other claimholders under § 1326(b)(1) as amended.

*Id.*, 341 B.R. 51. Affirming on appeal, the *Sanders* district court stated: "[H]ad Congress intended domestic support obligations to be paid before all other § 507 claims in a Chapter 13 Plan, it would not have included the language found in § 1326(b)(1)." *Sanders*, 347 B.R. 776, 780 (N.D. Ala. 2006).

Similar cases holding that the attorney's fees of debtor's counsel may be paid before or at least concurrently with other Section 507 priority claims are legion both before and after BAPCPA. *In re Nevels*, 415 B.R. 832, 837 (Bankr. D.N.M. 2009)("There is no priority of payment rule in Chapter 13…."); *Wells Fargo Fin. Ga., Inc. v. Baxter (In re Williams)*, 385 B.R. 468 (Bankr. S.D. Ga. 2008)(holding that "[b]ased upon the plan language of § 1326(b)(1), § 507(a)(2) claims must be paid before, or concurrently with, payments to other creditors and determining that DSO claim was wrongfully paid ahead of debtor's counsel); *Ala. Dept. of Human Res. v. Brown (In re Brown)*, 2008 WL 205578, at *2 (M.D. Ala. Jan. 24, 2008)("a Chapter 13 plan distribution to priority creditors need not be made in the order that they are listed in § 507(a)"); *In re Parker*, 21 B.R. 692, 694 (E.D. Tenn. 1982)(same). In fact, the Bankruptcy Appellate Panel for the Ninth Circuit even ruled that it is an abuse of discretion for the bankruptcy court to force a debtor's lawyer to receive attorney's fees only after other creditors already started to be paid. *Shorb v. Bishop (In re Shorb)*, 101 B.R. 185, 187 (9th Cir. BAP 1989).

In this case, the Debtor proposes in the Third Plan to pay the Debtor's counsel $10,000 as an administrative expense for attorney's fees before making disbursement to the Creditor on her DSO claim. The Court determines that the Third Plan fully complies with the Bankruptcy Code in such matter. Sections 507(a)(2), 1332(a)(1) and 1326(b)(1) together permit the Debtor's counsel to be paid before, or at least concurrently with, the DSO claim. In the special circumstances of this case (in which there is a single very large DSO claim that dominates all unsecured claims), payment of the Debtor's counsel ahead of the Creditor's DSO claim is particularly appropriate and warranted. Otherwise, the Debtor's counsel would not be paid anything for almost five years. Thus, the Creditor's Confirmation Objection based upon the Section 507 argument is rejected.

15

### 3. **The Bad Faith Objection.**

The Creditor also argued that the "Debtor's case was not filed in good faith." (Docket No. 87 at 2.) More specifically, the Creditor claimed that the Debtor acted in bad faith in filing this case because the Debtor proposes to make contributions to his 401(k) plan and to pay loans owed on that 401(k) plan prior to paying the DSO in full. The Creditor cited no legal authority in support of her contention that the Debtor cannot "backload" repayment of the DSO while funding his retirement accounts. The Debtor, meanwhile, contended that his 401(k) plan contributions are reasonable for the maintenance or support of himself and his dependents, and notes that, even if he were to decrease his monthly 401(k) payments and thus increase payments to unsecured creditors, this would have no effect on the Creditor, as the Third Plan provides for the Creditor's allowed claim to be paid in full over time.

During the August 3, 2016 non-evidentiary hearing, counsel for the Creditor confirmed that the sole basis for this objection was Section 1325(a)(7). Section 1325(a)(7) states: "… the court shall confirm a plan if… the action of the debtor in filing the petition was in good faith." At the non-evidentiary hearing counsel for the Creditor was not able to refer the Court to any case law supporting the Creditor's argument. Furthermore, the Creditor stated that no evidentiary hearing was required on the good faith argument since the only relevant facts were the Debtor's Statements and Schedules, the Third Plan, and testimony already taken at the April 27, 2016 trial. The Creditor's counsel requested an opportunity to file further legal briefing on the Section 1325(a)(7) good faith issue.

At the most recent hearing, the Debtor disputed the Creditor's position and argued that the Debtor filed this case in good faith. The Debtor's counsel agreed that no evidentiary hearing should be conducted on this issue since the necessary facts were only the Debtor's Statements and Schedules, the Third Plan, and testimony already taken at the April 27, 2016 trial.

In light of the foregoing, the Court refrains from ruling on the good faith issue raised in the Confirmation Objection at this time. Instead, the Court will decide the Section 1325(a)(7) matter after receiving further legal briefing and based only on the parties' stipulation as to the relevant facts as set forth in the Debtor's Statements and Schedules, the Third Plan, and testimony already taken at the April 27, 2016 trial.

### IV. **Conclusion.**

For the reasons set forth above, the Court:

SUSTAINS the Debtor's Second Claim Objection. The attorney's fees and costs asserted in the Creditor's Third Proof of Claim are DISALLOWED. Consistent with the Court's May 6, 2016 oral ruling, the Creditor's claim is limited to $108,085, which amount is entitled to priority as a DSO under Sections 101(14A) and 507(a)(1)(A); and

DENIES two of the objections contained in the Creditor's Confirmation Objection to the Debtor's Third Plan. Specifically, the Court finds that the underfunding objection and the priority objection are not valid and do not bar confirmation of the Third Plan.

The Court does not rule on the final objection contained in the Creditor's Confirmation Objection at this time. Instead, the Creditor is directed to submit legal support and argument establishing that the Third Plan is not confirmable under Section 1325(a)(7) for lack of good faith no later than **August 10, 2016**. The Debtor may respond by **August 15, 2016**. Based upon the parties' representations, no evidentiary hearing will be scheduled. Instead, the Court will only consider the Debtor's Statements and Schedules, the Third Plan, and testimony already taken at the April 27, 2016 trial in deciding the Section 1325(a)(7) objection. After receiving the further legal submissions, the Court will decide the Section 1325(a)(7) objection in due course.

Dated: August 4, 2016.

BY THE COURT:

*Thomas B. McNamara*
Thomas B. McNamara
United States Bankruptcy Judge